UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 2:18-cv-08497-FWS-E                       Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Melissa H. Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiff:                    Attorneys Present for Defendant:

Not Present                                        Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [149]**

Before the court is Plaintiff Securities and Exchange Commission's ("Plaintiff") Motion for Summary Judgment ("Motion" or "Mot."). (Dkt. 149.)  Defendant Ryan Morgan Evans ("Defendant") opposes the Motion ("Opposition" or "Opp."). (Dkt. 152.)  Plaintiff also filed a Reply. (Dkt. 154.)  The court held oral argument on this matter on March 23, 2023, then took the matter under submission. (Dkt. 167.)  Based on the record, as applied to the applicable law, the court **GRANTS IN PART AND DENIES IN PART** the Motion.

## I.     Background

### A.     Summary of Undisputed Facts

This SEC enforcement  action arises from an alleged Ponzi scheme conducted by Saivian LLC, Saivian International Limited ("Saivian International"), and Realty Share Network, LLC. (*See* Dkt. 78 ("FAC"); Dkt. 149-2 ("P. SUF") ¶¶ 24-28.)  From approximately October 28, 2015, to September 1, 2017, Saivian LLC and Saivian International began soliciting persons in the United States and abroad, respectively, to purchase their "Cashback Memberships."[1]  (*Id.*

---

[1] The Cashback Memberships were known by a variety of names, brands, and/or iterations, including: (1) the "Retail Shopping Membership" or "RSM"; (2) the "Global Retail Shopping

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                     Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

¶ 24.)  The Cashback Membership was advertised as enabling members to obtain 20% cashback on their retail purchases or up to $3,000 annually.  (*Id.* ¶ 26; Dkt. 152-1 ("D. SUF") ¶ 26.)  The Cashback Membership cost $125 every twenty-eight calendar days.  (D. SUF ¶ 27.)  In addition to paying the fees every twenty-eight days,[2] to obtain the advertised 20% cashback benefit, Cashback Members had to maintain an active Cashback Membership by submitting digital copies of their point-of-sale ("POS") retail receipts to Saivian.  (*Id.* ¶ 28.)

Members could then "redeem," or request the actual cashback they accrued under the terms of the Cashback Membership, a maximum of $250 in cashback every thirty days.  (*Id.* ¶ 29.)  Alternatively, members could receive a Saivian "pass," an electronic code that could be entered on the Saivian website to activate or renew a membership, in lieu of cashback.  (*Id.* ¶ 31.)  A Cashback Member was not eligible to receive cashback until ninety days had passed from the date of their membership purchase and three payments of $125 were made; similarly, a Cashback Member could not receive a pass until sixty days after purchasing the Cashback Membership.  (*Id.* ¶¶ 30-31.)

Although Saivian LLC and Saivian International maintained separate accounts, (*id.* ¶ 34), both entities pooled Cashback Members' membership payments in those accounts and did not maintain separate bank or financial accounts for individual Cashback Members, (P. SUF ¶ 34.)  When Cashback Members requested cashback payments on their POS receipt redemptions, the cashback payments were largely made from the same bank and digital asset accounts that received the Cashback Membership fee payments.  (D. SUF ¶ 35.)  Saivian maintained a formal no refund policy for Cashback Membership payments.  (*Id.* ¶ 37.)

---

Membership" or "GRSM"; and (3) the "Global Savings Plan" or "GSP."  (P. SUF ¶ 25; D. SUF ¶ 25.)  The essential characteristics of the Cashback Membership product remained the same.  (*Id.*)
[2] Defendant notes that cashback memberships could also be paid using free membership passes provided to Saivian affliates.  (*See* D. SUF ¶¶ 27-28.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                              Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Beginning in or around June 24, 2016, Saivian began selling a membership called the Merchant Advertising Program ("MAP") through which merchants who paid $125 in membership fees every twenty-eight days would be listed on the Saivian website and mobile application. (*Id.* ¶¶ 50, 51.) After MAP launched, Saivian and Defendant began representing that MAP revenue would help subsidize or fund the cashback membership payments. (*Id.* ¶ 54.)

From approximately January 2016 through October 2016, Defendant was a Member and Affiliate of Saivian's Cashback Membership Program ("Cashback Program"). (P. SUF ¶ 1.) Defendant later hosted a series of meetings to promote Saivian and uploaded recordings of the meetings to social media platforms. (D. SUF ¶ 5.) Then, beginning in approximately October 2016, Defendant served as the Operations Director of Saivian International. (D. SUF ¶ 8.) In this role, Defendant assisted with the technological operations of Saivian, including working on the mobile application, MAP, software, and technical support. (*Id.* ¶¶ 10, 50.) Defendant also conducted online video presentations. (*Id.* ¶ 11.) From around June 2017 through September 2017, Defendant served as the Vice President of Marketing for Saivian International. (*Id.* ¶ 13.)

**B.     Evidentiary Objections**

Defendant did not object to any of Plaintiff's evidence, (*see generally* Dkt. 152); thus, the court analyzes only Plaintiff's evidentiary objections, (*see* Dkt. 154-1).

1.     <u>Legal Standard</u>

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) ("A district court's ruling on a motion for summary judgment may only be based on admissible evidence."). In the context of a summary judgment, a district court "must also rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). "A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of Univ. of*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                                    Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

*Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *accord Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 211 L. Ed. 2d 400 (Dec. 13, 2021). Additionally, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence." *Burch*, 433 F. Supp. 2d at 1120; *see Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

"'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion, are all duplicative of the summary judgment standard itself' and unnecessary to consider here." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (alteration omitted) (quoting *Burch*, 433 F. Supp. 2d at 1119) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)); *see also Sandoval*, 985 F.3d at 665. "Similarly, the [c]ourt will not consider the parties' objections to the characterization of or purported misstatement of the evidence represented." *Holt*, 370 F. Supp. 3d at 1164 (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc*., 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008)). "Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues." *Id.* (citing *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013)).

"At the summary judgment stage," the court "do[es] not focus on the admissibility of the evidence's form" but "instead focus[es] on the admissibility of its contents." *Fraser*, 342 F.3d at 1036 (citations omitted). Accordingly, except in the rare instances in which the objecting party demonstrates with specificity that the subject evidence could not be produced in a proper format at trial, the court does not consider any objections on the grounds that the evidence "constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge." *Holt*, 379 F. Supp. 3d at 1164 (citing *Burch*, 433 F. Supp. 2d at 1122); *see also Sandoval*, 985 F.3d at 665-67; *id.* at 667 (objections for foundation "provide[] no basis for excluding the evidence" where objecting party does not provide counterparty with "notice of the specific ground of objection and, consequently, what could be done to cure any defects").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                               Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Relatedly, objections based on a failure to comply with the technicalities of authentication requirements or the best evidence rule are inappropriate.  *See Adams v. Kraft*, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. Oct. 25, 2011) ("On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial."); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding that court was not precluded from considering declaration in awarding summary judgment even if declaration violated best evidence rule if the underlying facts would be admissible as evidence).

       2.   <u>Plaintiff's Objections</u>

Plaintiff objects to three exhibits proffered by Defendant pursuant to Federal Rules of Civil Procedure 26(a)(2) and 37(c): (1) Defendant's Exhibit 7, an expert report by Professor Anne T. Coughlan; (2) Defendant's Exhibit 15, a report by Albert Boutrous; and (3) Defendant's Exhibit 43, Mr. Boutrous's deposition transcript.  (*See* Dkt. 154-1 at 5-7.) These expert reports and deposition transcripts were previously disclosed by another defendant no longer party to this case.  (*See id.*)  Plaintiff argues Defendant never independently disclosed Professor Coughlan or Mr. Boutrous as his own expert witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2) and thus their reports and testimony should be excluded under Federal Rule of Civil Procedure 37(c).  (*Id.*)  Alternatively, Plaintiff seeks to exclude Professor Coughlan under Federal Rule of Evidence 702 as lacking specialized knowledge, skill, or experience related to Ponzi schemes.  (*Id.*)

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the "identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  In addition, "this disclosure must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case . . . ."  Fed. R. Civ. P. 26(a)(2)(B).  If the party fails to provide information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "The Ninth Circuit gives district courts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                              Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

'particularly wide latitude' to issue sanctions under Rule 37 if a party does not comply with Rule 26 disclosure requirements," including precluding the evidence. *Smitherman v. Experian Info. Sols., Inc.*, 2022 WL 225085, at *3 (D. Nev. Jan. 25, 2022) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F. 3d 1101, 1106 (9th Cir. 2001)). "The burden is on the party facing sanctions to show that its failure to comply with Rule 26 was either justified or harmless." *Id.*

In this case, the court finds Defendant's two expert witness reports and accompanying deposition testimony violated Rule 26's disclosure requirements. Specifically, Exhibits 7, 15, and 43 constitute reports or testimony by experts that must be identified by name. *See* Fed. R. Civ. P. 26(a)(2). The record demonstrates Defendant did not personally disclose these experts by the expert disclosure deadline of April 1, 2022, (*see* Dkt. 117), and that the defendants that did disclose these experts "withdr[ew] any papers filed in this action to the extent that they deny any allegation in the complaint," (Dkt. 144 at 7). Because Defendant failed to disclose the identity or reports of these experts and does not adequately address the late nature of these expert disclosures, the court concludes Defendant has not met its burden to show that the failure to disclose the identity of these experts was either substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, the court **SUSTAINS** Plaintiff's objection to Exhibits 7, 15, and 43 and excludes Exhibits 7, 15, and 43 from consideration in the instant Motion. *See Yeti by Molly*, 259 F.3d at 1106 ("[E]xclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).").

## II.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material." *Id.* "Only disputes over facts that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                              Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact."). The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                          Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S.Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                              Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

justifiable inferences are to be drawn in its favor.  *Id.* at 255, 106 S. Ct. 2505.

627 F.3d 376, 387 (9th Cir. 2010).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).  "Where no such showing is made, the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id*. (cleaned up).

### III.   Discussion

The SEC moves for summary judgment with respect to all claims pled against Defendant, including: (1) scheme liability in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1); (2) money or property obtained by means of untrue statements in violation of Section 17(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2); (3) fraud in the offer or sale of securities in violation of Section 17(a)(3) of the Securities Act, 15 U.S.C. § 17q(a)(3); (4) fraud in connection with the purchase or sale of securities in violation of Section 10b of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a)-(c), thereunder, 17 C.F.R. § 240.10b-5(a)-(c); (5) fraud in connection with the purchase or sale of securities in violation of Section 10b of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), thereunder, 17 C.F.R. § 240.10b-5(b); and (6) unregistered offer or sale of securities in violation of Section 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c).  (*See* Mot. at 1-2; FAC ¶¶ 96-118.)

### A.   Whether a Cashback Membership Constitutes an Investment Contract

As a threshold question, the parties dispute whether the Cashback Memberships constitute "investment contracts" governed by securities laws.  (*See* Mot. at 13-15; Opp. at 10-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                                    Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

17; Reply at 1-3.)  Each of Plaintiff's claims require that a Cashback Membership constitute a "security" governed by the federal securities law.[3]  Both the Securities Act of 1933 and the Securities and Exchange Act of 1934 define the term "security" to include "investment contracts."  *See* 15 U.S.C. § 77(b)(a)(1); 15 U.S.C. § 78c(a)(10).

        To determine whether the Cashback Memberships constitute an investment contract, the court looks to the definition set forth by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) ("*Howey*").  Under *Howey*, "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting *Howey*, 328 U.S. at 298-99). "This definition embodies a flexible rather than a static principle, one that is capable of adaptation to meet countless and variable schemes devised by those who seek the use of the money of others on the promises of profits."  *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (quoting *Howey*, 328 U.S. at 299).  Thus, "in searching for the meaning and scope of the word 'security' in [either] Act, form should be disregarded for substance and the emphasis should be on economic reality."  *Tcherepnin v. Knight*, 389 U.S. 332. 336 (1967); *see also SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 351 (1943) ("Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as 'investment contracts,' or as 'any interest or instrument commonly known as a' security.").

---

[3] *See* 15 U.S.C. § 78j(b) (Section 10(b) claim prohibits any manipulative or deceptive device or contrivance "in connection with the purchase or sale of any security"); 15 U.S.C. § 77q(a) (Section 17(a) claim prohibits fraud "in the offer or sale of any securities"); 15 U.S.C. § 77e (15 U.S.C. §§ 77e(a) and 77e(c) (Section 5 claim prohibits "[s]ale or delivery after sale of unregistered securities" and use of interstate commerce to "offer to sell or offer to buy . . . any security").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                     Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

The Ninth Circuit has "distill[ed] *Howey*'s definition into a three-part test requiring '(1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others.'" *Warfield*, 569 F.3d at 1020 (quoting *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003)).  In applying the *Howey* test, courts "conduct an objective inquiry into the character of the instrument or transaction offered based on what purchasers were 'led to expect.'" *Id.* at 1021 (quoting *Howey*, 328 U.S. at 298-99).  As a part of this inquiry, courts may consider the "character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect," *Joiner*, 320 U.S. at 352-53, as well as any promotional materials associated with the instrument or transaction, *Warfield*, 569 F.3d at 1022; *see also Hocking v. Dubois*, 885 F.2d 1449, 1452 (9th Cir. 1989 ) (en banc) ("Characterization of the inducement cannot be accomplished without a thorough examination of the representations made by the defendants as the basis of the sale," including  "[p]romotional materials, merchandising approaches, oral assurances and contractual agreements") (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.3d 1036, 1039-40 (10th Cir. 1980)).

       1.    Investment of Money

The first prong "requires that the investor 'commit [their] assets to the enterprise in such a manner as to subject [themselves] to financial loss.'" *Rubera*, 350 F.3d at 1090 (quoting *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976) (per curiam)).

The court finds Plaintiff has met its initial burden of showing that the Cashback Program required an investment of money.[4]  The record demonstrates it is undisputed that the Cashback

---

[4] In Reply, Plaintiff repeatedly argues that the court "has already established" or "already held" that the *Howey* test's prongs were met at the "motion to dismiss phase," (*see* Dkt. 73), and that this finding constitutes the "law of the case," (*see, e.g.*, Reply at 7 n.1 (citing *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) for the proposition that "the-law-of-the case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                         Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Membership purchasers paid $125 every twenty-eight days to be eligible for the 20% cash back. (*See* P. SUF ¶¶ 27-28, 43-45.)  Furthermore, Plaintiff's evidence demonstrates the Cashback Program's promotional materials, including videos on YouTube and Facebook, webinars, conference calls, social media posts, and other statements of Defendant and Saivian officers, promised members financial gain.  (*See, e.g.*, *id.* ¶¶ 7, 42, 44-45, 71-72; Dkt. 150-61 at 1-20 (stating "you can save $3000 per year with the [program]" and "it's almost like doubling your money for something you are already doing anyway"); Dkt. 150-62 at 20-22 (same).)  The members also risked financial loss from the possibility that Saivian would not be able to honor its promises by monetizing the POS data, particularly because Saivian adopted a formal "no refund" policy.  (*See, e.g.*, P. SUF ¶ 37; D. SUF ¶ 37.)

The court observes Defendant does not point to any genuine issue of material fact with respect to the first prong.  Instead, Defendant argues the undisputed evidence demonstrates the Cashback Program did not involve an "investment of money" because the Cashback Membership did not promise profits from any investment but instead offered cashback comparable to credit card rewards.  (*See* Opp. at 11-13.)  Defendant also points to a statement

---

The law of the case doctrine does not apply here, particularly given the different standards applicable to a motion to dismiss versus a motion for summary judgment.  *See, e.g.*, *In re Rainbow Mag., Inc.*, 77 F.3d 278, 291 (9th Cir. 1996) ("The law of the case doctrine states that the decision of an *appellate* court on a legal issue must be followed in all subsequent proceedings in the same case.") (emphasis added) (internal quotation marks omitted); *Braden Partners, LP v. Twin City Fire Ins. Co.*, 2017 WL 63019, at *6 (N.D. Cal. 2017) ("Given the different standards for motions to dismiss and motions for summary judgment, courts may (and routinely do) reconsider the same legal arguments at the summary judgment stage."); *Guadiana v. State Farm Fire & Cas. Co.*, 2009 WL 3763693, *6 (D. Ariz. Nov. 10, 2009) ("[T]he law of the case ordinarily does not apply to issues raised on summary judgment after they were rejected on a motion to dismiss because motions for summary judgment are subject to a different standard.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                                   Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

by Saivian's Director of Marketing in a Facebook chat explicitly saying "[t]here are no investors" and "[t]his is not an investment program."  (P. SUF ¶ 87.)

Defendant's argument construes the investment of money prong too narrowly.  Instead of focusing exclusively on profit, courts have found this prong satisfied where the promotional materials surrounding the transaction promised financial gain and investors committed their assets based on those promises.  *See, e.g.*, *Warfield*, 569 F.3d at 1022 (finding investment of money prong satisfied "because under the terms of the [defendant's] offer, the purchasers of the [defendant's] gift annuities committed their assets in return for promised financial gain"); *Edwards*, 540 U.S. at 392 (finding payphone sale and buyback scheme constituted investment contract because promotional materials noted a "potential for ongoing revenue generation"); *Rubera*, 350 F.3d at 1090 (finding investment of money prong satisfied where investors "turned over substantial amounts of money . . . with the hope that [the investment managers' efforts] would yield financial gains"); *cf. Forman*, 421 U.S. at 854 (finding investment contract not met because the promotional materials did not "seek to attract investors by the prospect of profits," but rather "repeatedly emphasized the 'nonprofit' nature of the endeavor").

Such is the case here where the undisputed evidence indicates the Cashback Program members committed their assets, or $125 every twenty-eight days, in order to obtain the financial gain touted in the promotional materials, or up to 20% cashback and $3,000 annually. Defendant does not adequately raise any other genuine issue of material fact as to whether the representations of Saivian's officers, including the representations in the promotional materials, promised financial gain.  *See Hocking*, 885 F.2d at 1452 ("Characterization of the inducement cannot be accomplished without a thorough examination of the representations made by the defendants as the basis of the sale," including "[p]romotional materials, merchandising approaches, oral assurances and contractual agreements") (quoting *Aldrich*, 627 F.3d at 1039-40).  Accordingly, based on the record, the court concludes the undisputed evidence demonstrates that the Cashback Membership satisfies the first *Howey* prong.

        2.        Common Enterprise

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                    Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

"In the Ninth Circuit, a common enterprise exists where the investment scheme involved either 'horizontal commonality' or 'strict vertical commonality.'"  *SEC v. NAC Found., LLC*, 512 F. Supp. 3d 988, 996 (N.D. Cal. 2021) (quoting *Hocking*, 885 F.2d at 1459).  "Horizontal commonality describes the relationship shared by two or more investors who pool their investments together and split the net profits and losses in accordance with their pro rata investments."  *Hocking v. Dubois*, 839 F.2d 560, 566 (9th Cir. 1988), *aff'd in relevant part*, 885 F.2d 1449, 1459 (9th Cir. 1989).  By contrast, "vertical commonality may be established by showing that the fortunes of the investors are linked with those of the promoters."  *SEC v. R.G. Reynolds Enters., Inc.*, 952 F.3d 1125, 1130 (9th Cir. 1991) (internal quotation marks and citation omitted).

Plaintiff relies on a horizontal commonality theory, arguing Saivian pooled membership funds and then used those funds to pay investors.  (*See* Mot. at 14; Reply at 8-9; P. SUF 33-41, 43, 66.)  "Horizontal commonality is established when investors' assets are pooled and the fortunes of each investor is tied to the fortunes of other investors as well as to the success of the overall enterprise."  *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 369 (S.D.N.Y. 2020) (citing *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994)).  "Generally, pooling occurs when the funds received by the promoter through an offering are, essentially, reinvested by the promoter into the business," and "such reinvestment increases the value of the instrument offered."  *Friel v. Dapper Labs, Inc.*, --- F. Supp. 3d ---, 2023 WL 2162747, at *11 (S.D.N.Y. 2023) (citing *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274, 278 (7th Cir. 1972)).

The court finds Plaintiff has met its burden as to horizontal commonality.  The undisputed evidence demonstrates that: (1) Saivian did not maintain separate bank accounts for individual members but instead the Cashback Program members' monthly fees were pooled; (2) the members had no claim to their monthly membership fees after they paid the dues in exchange for the ability to earn up to 20% cashback; and (3) members' ability to recover cashback depended on Saivian's ability to monetize the POS data.  (*See, e.g.*, P. SUF ¶¶ 33, 34, 37, 39.)  The court finds this evidence sufficient to show that the fortunes of Cashback Members were tied to each other and constituted a common enterprise.  *See, e.g.*, *Hocking*, 885

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                    Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

F.2d at 1459 (finding horizontal commonality where "participants pool their assets; they give up any claim to profits or losses attributable to their particular investments in return for a pro rata share of the profits of the enterprise; and they make their collective fortunes dependent on the success of a single common enterprise"); *SEC v. Thomas*, 2021 WL 5826279, at *5 (D. Nev. Aug. 24, 2021) (finding horizontal commonality where the investors' funds were pooled together to make the sports bets underlying the scheme).

Defendant does not raise any genuine issues of material fact with respect to the second *Howey* prong. (*See* Opp. at 13-15.) Instead, Defendant argues that the undisputed evidence does not establish horizontal commonality because the Cashback Members were not compensated based on their pro rata share of Saivian's profits and were entitled to receive the same 20% cashback on their submitted shopping receipts regardless of the actions of other members or Saivian. (*Id.* at 14.) Defendant conflates Cashback Members' *entitlement* to receive payments under the terms of the Cashback Program with the economic realities of the cashback transactions. Unless and until Saivian and its representatives monetized the POS data or obtained other revenue sources, Cashback Members' fortunes, i.e., their ability to earn profits at the rate promised by the Cashback Membership program, were tied to other Members' fortunes in the form of their contributions to Saivian. (*See, e.g.*, D. SUF ¶¶ 39, 50.) Therefore, the court concludes no genuine issue of material fact exists as to *Howey*'s second prong.

3.   <u>An Expectation of Profits Produced by the Efforts of a Person Other than the Investor</u>

Finally, to qualify as an investment contract, the investment must entail "a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Forman*, 421 U.S. at 852. "The third prong of the test . . . involves two distinct concepts: whether a transaction involves any expectation of profit and whether expected profits are the product of the efforts of a person other than the investor." *Warfield*, 569 F.3d at 1020. The profits "need not come 'solely' from the efforts of the promoters or others." *Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980) (per curiam). Instead, the third prong requires

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                          Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

that "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Hocking*, 885 F.2d at 155.

Plaintiff argues the undisputed facts satisfy the third prong because the Cashback Members had no ability to make managerial decisions about their investments or deal with marketing partners but were reliant on Saivian and its officers, including Defendant, to monetize their POS data or recruit new members. (Mot. at 14-15; P. SUF ¶¶ 38-41, 65-76, 81, 82.) In Opposition, Defendant argues that the undisputed facts show that Cashback Members' profits hinged on their own efforts rather than any efforts by Saivian or Defendant because Cashback Members had to make retail purchases and submit the receipts in order to earn the 20% in cashback rewards. (Opp. at 15-16 (citing D. SUF ¶¶ 26, 28).)

The court finds the undisputed facts demonstrate that a Cashback Membership involved an expectation of profits that are the product of the efforts of a person other than the investor. First, the profits discussed in *Howey* relate to "profits—in the sense of the income or return—that investors seek on their investment, not the profits of the scheme in which they invest, and may include, for example, dividends, other periodic payments, or the increased value of the investment." *Edwards*, 540 U.S. at 390. In this case, the undisputed facts show Cashback Members expected profits in the form of fixed periodic cashback rewards guaranteed by the terms of the Cashback Membership Program. *See Warfield*, 569 F.3d at 1024 ("[F]ixed periodic payments . . . may constitute 'profits' for purposes of the *Howey* test."); *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 189 (3d. Cir. 2000) ("The mere fact that the expected rate of return is not speculative does not, by itself, establish that the . . . contracts here are not 'investment contracts' within the meaning of federal securities laws.").

In addition, Plaintiff's undisputed evidence demonstrates these profits depended upon the managerial or entrepreneurial efforts of Saivian personnel, rather than Cashback Members, to monetize the POS data. Again, "the question of an investor's control over [their] investment is decided in terms of practical as well as legal ability to control." *Hocking*, 885 F.2d at 1460.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                    Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Defendant's argument misses the mark because the ability to sell this data resided entirely within Saivian's control and the Cashback Membership Program was premised upon Saivian and its representatives' purported efforts to monetize POS data.  (*See, e.g.*, P. SUF ¶¶ 38, 40-41, 43; D. SUF ¶¶ 38, 40-41, 43.)  Therefore, the undisputed evidence establishes that the investors expected to profit and relied on Saivian's entrepreneurial skill and effort to make the Cashback Membership Program profitable.  Accordingly, the court concludes *Howey*'s third prong is also satisfied.

        In sum, the court reiterates that "securities law places emphasis on economic reality and disregards form for substance."  *SEC v. M&A West, Inc.*, 538 F.3d 1043, 1053 (9th Cir. 2008).  Based on the record, particularly the economic reality underlying the Cashback Membership Program, the court concludes the undisputed evidence demonstrates that a Cashback Membership satisfies all three prongs of the *Howey* test and qualifies as an investment contract.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1130 (9th Cir. 2013) ("So long as money is invested in a common enterprise with profits anticipated by virtue of others' work, there may be an investment contract.").  Because the Cashback Membership constitutes an investment contract governed by federal securities law, the court proceeds to assess the merits of Plaintiff's claims.

**B.      Unregistered Offer or Sale of Securities in Violation of Section 5(a) and (c) of the Securities Act**

        Plaintiff argues that Defendant violated Sections 5(a) and (c) of the Securities Act, 17 U.S.C. § 77e, by repeatedly offering and promoting sales of Cashback Memberships through interstate communications and working on technologies designed to drive sales of memberships.  (Mot. at 15-16.)  In response, Defendant argues only that Plaintiff cannot prove a violation of Section 5 because the Cashback Memberships did not constitute an investment contract or security.  (*See* Opp. at 24.)

        "Section 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c), make it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                                Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

that security, unless the transaction qualifies for an exemption from registration." *SEC v. Platform Wireless Int'l Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010). "Section 5(a)(1) 'broadly prohibits sales of securities irrespective of the character of the person making them,'" *SEC v. CMKM Diamonds, Inc*, 729 F.3d 1248, 1255 (9th Cir. 2013) (citation omitted), and thus "does not limit liability to initial distribution." *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007) (citing 15 U.S.C. § 77e(a)). "To establish a prima facie case for violation of Section 5, the SEC must show that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *CMKM Diamonds*, 729 F.3d at 1255 (citing *Phan*, 500 F.3d at 902). The SEC bears the initial burden of demonstrating the defendant violated the registration provisions, then the burden shifts to the defendant to prove that an exemption applies. *See id.* (citing *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980)).

Under the first element, Plaintiff must demonstrate there was no valid registration statement in effect for Defendant's Cashback Memberships. *See CMKM Diamonds*, 729 F.3d at 1255. The parties do not dispute that there was no valid registration statement in effect for the Cashback Memberships. (*See* P. SUF ¶ 23; D. SUF ¶ 23.)

Under the second element, Plaintiff must show that "the defendant directly or indirectly sold or offered to sell securities." *Phan*, 500 F.3d at 902. The terms "sale" or "sell" include "every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(a)(3). "A 'participant' in the sale may be liable under Section 5 if the defendant was 'both a necessary participant and substantial factor in the sales transaction.'" *SEC v. Alexander*, 115 F. Supp. 3d 1071, 1084 (N.D. Cal. 2015) (quoting *Phan*, 500 F.3d at 906); *see also SEC v. Rogers*, 790 F.2d 1450, 1456 (9th Cir. 1986) ("While 'substantial participation' is a concept without precise bounds, previous cases suggest that one who plans a scheme, or, at the least, is a substantial motivating factor behind it, will be held liable as a seller."). In deciding whether the defendant played a necessary role, the court must ask "whether, but for the defendant's participation, the sale transaction would not have taken place." *Murphy*, 626 F.2d at 651.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                          Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

In this case, the court finds the undisputed evidence demonstrates that Defendant "directly or indirectly sold or offered to sell securities" and was both a "necessary participant" and "substantial factor" in the Cashback Membership offerings.  First, Plaintiff put forth sufficient evidence demonstrating Defendant promoted sales of the Cashback Memberships through video promotions, online events, and in-person meetings and directly sold Cashback Memberships by selling bulk passes to members.  (*See, e.g.,* P. SUF ¶¶ 5, 7, 10-12, 42, 76, 81.) Based on the record, the court concludes Defendant's "extensive role in facilitating the transactions . . . was a substantial factor in the sales of unregistered securities," *Murphy*, 626 F.2d at 652, and Plaintiff has adequately demonstrated that Defendant both directly and indirectly sold unregistered securities, *see Phan*, 500 F.3d at 906.

With respect to the third element, Plaintiff's evidence has also established that the sales were made publicly through interstate commerce by promoting the Cashback Membership through video and in-person meetings, webinars, conference calls, social media, and live events. (*See, e.g.,* P. SUF 5, 7, 10-12, 42, 76, 81.)  *See also Matheson v. Armburst*, 284 F.2d 670, 673 (9th Cir. 1960) ("All that is required . . . is a showing that a means, instrumentality or facility described in the introductory language of the [federal securities laws] was used."); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("We agree that the Internet is generally an instrumentality of interstate commerce."); *SEC v. Straub*, 921 F.Supp.2d 244, 262 (S.D.N.Y. 2013) ("[I]t is undisputed that the use of the internet is an 'instrumentality of interstate commerce.'") (citations omitted).  The court finds this undisputed evidence sufficient to establish that the unregistered securities were made publicly available through interstate commerce because Defendant regularly communicated with prospective and actual Cashback Members using the Internet and social media and organized bank transfers.

Accordingly, the court concludes Plaintiff has made a prima facie case of Defendant's liability under section 5(a) and (c).  Because the court finds Plaintiff has met its initial burden of demonstrating that the undisputed evidence establishes Defendant's violation of Section 5(a) and (c), the burden shifts to Defendant to demonstrate the securities at issue are entitled to a registration exemption.  *See CMKM Diamonds*, 729 F.3d at 1255; *Murphy*, 626 F.2d at 641.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                               Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

As discussed above, Defendant does not cite an applicable exemption or point to any evidence contradicting Plaintiff's prima facie case but instead argues that Plaintiff cannot prove a violation of Section 5 because the Cashback Memberships did not constitute an investment contract or security.  (*See* Opp. at 24.)  Because the court finds a Cashback Membership does constitute an investment contract, as discussed in section III.A *supra*, the court concludes Defendant has not met his shifted burden of demonstrating that the unregistered securities were entitled to a registration exemption.  *See Alexander*, 115 F. Supp. 3d at 1085 (finding summary judgment appropriate against a Defendant who failed to carry its "burden of showing that a genuine issue of material fact exists as to the applicability of a registration exemption.").

In sum, Plaintiff has met its initial burden by demonstrating the undisputed evidence establishes a Section 5 violation and Defendant did not produce sufficient "evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *See In re Oracle*, 627 F.3d at 387.  Therefore, the court **GRANTS** the Motion as to Plaintiff's Seventh Cause of Action under Section 5 of the Securities Act.

C.    **Violations of the Antifraud Provisions of Section 17(a), Section 10(b), and Rule 10b-5**

Plaintiff argues that Defendant violated the antifraud provisions of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder by: (1) perpetrating a Ponzi scheme to defraud investors; and (2) making material misrepresentations and omissions.  (Mot. at 16-20.)  Because Plaintiff groups these claims together, the court analyzes the Sections 17(a) and 10(b) and Rule 10b-5 claims jointly.  *See, e.g.*, *SEC v. Cap. Cove Bancorp LLC*, 2016 WL 11752892, at *5-6 (C.D. Cal. Aug. 31, 2016) (analyzing section 17(a), section 10(b), and rule 10b-5 claims jointly).

"Section 17(a) of the 1933 Act, Section 10(b) of the 1934 Act, and Rule 10b-5 'forbid making [1] a material misstatement or omission [2] in connection with the offer or sale of a security [3] by means of interstate commerce."  *Phan*, 500 F.3d at 907 (quoting *SEC v. Dain Rauscher*, 254 F.3d 852, 856 (9th Cir. 2001)).  Sections 17(a)(1) and (a)(3), Section 10(b), and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                              Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Rules 10-b5(a) and (c) specifically prohibit employing "any device, scheme, or artifice to defraud," or engaging in "any act, practice or course of business which operates or would operates as a fraud or deceit upon a person." 15 U.S.C. §§ 77q(a)(1), (a)(3); 17 C.F.R. §§ 240.10b-5(a), (c); *see also* 15 U.S.C. § 78j(b) (prohibiting using or employing "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors"). Section 17(a)(2) prohibits "obtain[ing] money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 15 U.S.C 77q(a)(2). As discussed below, the court concludes several genuine disputes of material fact preclude summary judgment on Plaintiff's antifraud claims.

### 1.     Material Misstatement or Omission Liability

First, the court finds a genuine issue of material fact exists as to Defendant's material misstatements. "The standard of materiality is an objective one." *United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011) (citing *United States v. Reyes*, 577 F.3d 1069, 1076 (9th Cir. 2009)). This standard will be "satisfied only if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *Phan*, 500 F.3d at 908 (quoting *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988)). "'Determining materiality in securities fraud cases should ordinarily be left to the trier of fact;' however, materiality may appropriately be resolved as a matter of law by summary judgment where 'the established omissions are so obviously important to an investor that reasonable minds cannot differ on the question of materiality.'" *Id.* (quoting first *In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989), then *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)).

Plaintiff argues Defendant made several misrepresentations or omissions in the sale or offer of Cashback Memberships. (Mot. at 17-19.) Plaintiff specifically identifies three statements by Defendant constituting material misstatements and one statement by another

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                           Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Saivian affiliate that Defendant failed to correct.  First, Plaintiff points to Defendant's statement in a webinar posted to the official Saivian YouTube page in response to a question about "the advertisers that are buying our receipts."  (Mot. at 17-19; P. SUF ¶ 76.)  Defendant stated: "We have three vendors right now.  I'm not going to release the names because they are mine.  They are my personal contacts, as well as EJ [Dalius'], his personal contacts.  We have big connections with these data buying/collecting companies."  (P. SUF ¶ 76).  Plaintiff argues this statement was materially misleading because Saivian did not have any vendors lined up to purchase data.  (Mot. at 18; P. SUF ¶¶ 46-47, 83-84, 91.)

Second, in a February 27, 2017, video also posted to the official Saivian YouTube page, Defendant said: "Marketing partners gave Saivian the money.  We are the ones giving you cashback."  (P. SUF ¶ 81).  Plaintiff argues this statement was materially false or misleading because Saivian did not generate any revenue from sale of POS receipts to marketing partners.  (Mot. at 12; P.SUF ¶ 84.)

Third, in a June 21, 2017, video posted to Saivian's Facebook membership group, Defendant appeared with another Saivian affiliate.  (P. SUF ¶ 82.)  The affiliate responded to a concern that "it seems too good to be true on the fact that I can pay $125 and get back $240 a month," by stating:

> [I]t's simple.  We sell that information to big marketing companies, so they're willing to do that for the information that we're giving.  That's why they can give us that cash back and that's it.  Don't go into, well, there's a business opportunity tied to it and this works like this and you could make commissions.  That's not the question they're asking.  They're asking you how we can afford to give them that $250 back.

(*Id.*)  Plaintiff argues this statement by a Saivian affiliate was materially false or misleading and Defendant made no correction to it despite knowing it was false at that time.  (Mot. at 12; P. SUF ¶ 83.)

---

**CIVIL MINUTES – GENERAL**                                               **22**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                                      Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

Fourth, during a December 28, 2016, Saivian webinar, Defendant stated that the MAP memberships numbered 400 worldwide and were fully funding cashback payments.  (P. SUF ¶ 84.)  Plaintiff argues this was a material misstatement because Saivian had sold very few MAP memberships to retailers and generated less than $60,000 from those sales.  (Mot. at 12; P. SUF ¶¶ 56, 63.)

In response, Defendant points to additional portions of the videos in which he argues he qualified or fixed those statements.  (Opp. at 26-29.)  For example, with respect to the December 28, 2016, video, Defendant argues that Plaintiff omitted a section of the video where he said "our data isn't that marketable" and the "cashback does come from the MAP [members] . . . Actually all of it right now."  (Opp. at 27, D. SUF ¶¶ 81, 82.)  Similarly, with respect to the February 27, 2017 video, Defendant argues that he qualified his statements by saying "Saivian is giving you cash back, okay, not, you know, all those other companies, not marketing partners, not all that."  (Opp. at 27; P. SUF ¶ 81.)  Defendant argues that when these statements are viewed in their entirety a reasonable trier of fact could find that the statements were factually accurate.  (Opp. at 27.)  Based on this record, the court finds Defendant met his shifted burden of identifying a genuine dispute of material fact as to this element.  *See SEC v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011) ("Generally, 'whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact.'  Accordingly, resolving an issue as a matter of law is only appropriate when the adequacy of the disclosure is 'so obvious that reasonable minds [could] not differ.'") (quoting first *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995), then *Durning v. First Boston Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987)).

      2.    <u>Scheme Liability</u>

The court finds similar triable issues exist as to Defendant's scheme liability.  Plaintiff argues Defendant perpetrated a Ponzi scheme to defraud investors.  (Mot. at 13-14.)  A Ponzi scheme is "an investment fraud that involves the payment of purported returns to existing investors from funds contributed by new investors."  *SEC v. World Cap. Mkt., Inc.*, 864 F.3d 996, 1000 n.1 (9th Cir. 2017).  The securities antifraud provisions "prohibit any person, in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                                  Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

offer or sale of securities, 'to employ any device, scheme, or artifice to defraud' or 'to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.'" *SEC v. Hui Feng*, 935 F.3d 721, 736 (9th Cir. 2019) (quoting 15 U.S.C. §§ 77q(a)(1), (3)).  "To be liable for a scheme to defraud under Section 17(a) and Rule 10b-5, a defendant must have "committed a manipulative or deceptive act in furtherance of the scheme." *SEC v. Hui Feng*, 2017 WL 6551107, at *11 (C.D. Cal. Aug. 10, 2017), *aff'd* 935 F.3d at 736 (quoting *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997)).  The plaintiff must demonstrate that the defendant "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com*, 519 F.3d 1041, 1041–42 (9th Cir. 2008) (emphasis in original).  "It is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect." *Id.*

    The court finds genuine issues of material fact remain as to Defendant's scheme liability. In this case, some details of Saivian's finances—in short, evidence regarding whether Saivian operated as a Ponzi scheme in which existing investors were paid from funds contributed by new investors—exists in a database called the "RLJ Database." (*See, e.g.*, D. SUF ¶¶ 39, 48, 49, 56.)  Both parties agree that the "RLJ Database" was a tool used by Saivian to track membership fees and cashback rewards. (*See* Reply at 9-14; Opp. at 23 n.4.)  Plaintiff also states that the RLJ Database contains "the only operational data that Saivian ever" maintained and that both Saivian and Defendant relied on this data to manage Saivian's operations. (Reply at 12.)  Critically, Plaintiff relies in part on the RLJ Database to establish the existence of a Ponzi scheme. (*See* Mot. at 20-22; Reply at 9-14.)  Defendant, in turn, disputes the reliability and accuracy of this database, specifically pointing to the testimony of Jordan Goldman, a programmer and partner at RLJ Development, as stating the database was unreliable, contained numerous flaws, and did not present a complete picture of Saivian's finances. (*See, e.g.*, Opp. at 23; D. SUF ¶¶ 145-58; *see generally* Dkts. 153-11; 153-32; 153-45.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                          Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

---

Plaintiff argues any factual dispute regarding the reliability of the RLJ Database is not genuine in part because only Mr. Dalius, as the sole principal of Saviain, could have provided additional information sufficient to verify the reliability of the RLJ Database. (Reply at 12.) Because Mr. Dalius previously invoked his Fifth Amendment privilege when questioned about the database and facts pertaining to Defendant's liability generally, (P. SUF ¶¶ 96-99), Plaintiff argues Defendant should not be allowed to rely on a "frustration of discovery" to invoke a triable issue of fact. (*Id.*) Plaintiff also requests that the court draw two adverse inferences based on Mr. Dalius' refusal to testify that: (1) "Dalius controlled the Saivian entities," and (2) Saivian never had marketing partners or generated any revenue from the sale of POS receipts to marketing partners. (*Id.*; Mot. at 20-22.)

"When a party asserts the privilege against self-incrimination in a civil case, the district court has discretion to draw an adverse inference from such assertion." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008) (citations omitted). However, the Ninth Circuit has stated that "under certain circumstances . . . an adverse inference from an assertion of one's privilege not to reveal information is too high a price to pay." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000). To resolve "the tension between one party's Fifth Amendment rights and the other party's right to a fair proceeding" the court must analyze each request for an adverse inference "on a case-by-case basis under the microscope of the circumstances of that particular civil litigation." *Nationwide Life Ins.*, 541 F.3d at 911. A party will be entitled to the inference only where "there is a substantial need for the information," no "less burdensome way of obtaining that information," and "independent evidence of the fact about which the party refuses to testify." *Id.*

In this case, Plaintiff has adequately demonstrated it has a substantial need for information only Mr. Dalius could provide regarding Saivian's finances, including whether Saivian had any marketing partners or generated any revenue from the sale of POS receipts. Plaintiff has also demonstrated that there is no less burdensome way to obtain this information after Mr. Dalius invoked his Fifth Amendment right because Defendant disclaims direct knowledge of Saivian's finances and no other party or witness could provide such information.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                          Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

(*See, e.g.*, Mot. at 20-24; Reply at 14-15; P. SUF ¶¶ 6-7, 30, 38, 54, 92-95, 110, 116.)  Finally, Plaintiff advances, in part, information ascertained from the RLJ database as independent evidence of the facts related to Saivian's finances that Mr. Dalius refused to testify to.

The court may impute an adverse inference against Mr. Dalius to Defendant.  *See, e.g.*, *Planned Parenthood Federation of Am. v. Newman*, 2022 WL 13613963, at *3 (9th Cir. 2022) (holding the district court did not err "in permitting adverse inferences based on two non-parties invocations of the privilege against self-incrimination"); *Williams v. Kohl's Dept. Store, Inc.*, 2020 WL 3882953, at *20 (C.D. Cal. June 16, 2020) (citing *State Farm Mut. Auto. Ins. Co. v. Abrams*, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000) (collecting cases)).  In determining whether to impute the adverse inference to another party, courts consider the four-factor test articulated by the Second Circuit in *LiButti v. United States*, 107 F.3d 110, 122 (2d Cir. 1997), including:

> (1) the nature of the relevant relationship between the party invoking the Fifth Amendment and the co-party; (2) the degree of control the co-party has over the party invoking the Fifth Amendment; (3) the compatibility of interests between the party invoking the Fifth Amendment and the co-party; and (4) the role of the party invoking the Fifth Amendment in the litigation.

*Williams*, 2020 WL 3882953, at *20 (citing *LiButti*, 107 F.3d at 123–24).

On balance, the court finds the first, third, and fourth *Libutti* factors weigh in favor of imputing the adverse inferences drawn against Mr. Dalius to Defendant.  For example, as to the first factor, the court finds Mr. Dalius employed Defendant as both the Operations Director and Vice President of Marketing of Saivian International; the close nature of this relationship suggests Mr. Dalius would be unlikely to render testimony and damage this relationship.  (*See, e.g.*, *id.* ¶¶ 8, 13-15.)  As to the third factor, the interests of Mr. Dalius and Defendant are compatible in that both were co-defendants and had a joint defense agreement.  (*See, e.g.*, *id.* ¶ 100.)  As to the fourth factor, the non-party, Mr. Dalius, was the central figure in this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:18-cv-08497-FWS-E                              Date: May 24, 2023
Title: Securities and Exchange Commission v. Eric J. Dalius *et al.*

litigation as the founder, direct and indirect owner, and president of Saivian. (*See, e.g.*, *id.*
¶¶ 99, 102.)  Therefore, based on state of the record, as applied to the applicable law, the court
concludes imputing the adverse inferences drawn against Mr. Dalius to Defendant is
appropriate.

However, imputing the two requested adverse inferences to Defendant is not dispositive
because there is still a genuine issue of material fact regarding whether the RLJ Database and
the data stemming from it are reliable.  Although Plaintiff relies on these inferences to bolster
its argument that the RLJ Database is a reliable snapshot of Saivian's finances, Defendant has
still raised a triable issue of fact based on Mr. Goldman's testimony that the RLJ Database has
numerous errors or bugs.  "Summary judgment will not lie if the dispute about a material fact is
'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party."  *Anderson*, 477 U.S. at 248.  Based on the record, the court concludes this
genuine issue of material fact also precludes summary judgment on Plaintiff's scheme liability
claim.

3.   Summary

The court finds that Plaintiff met its initial burden "of identifying the elements of the
claim . . . on which summary judgment is sought and evidence that it believes demonstrates the
absence of an issue of material fact," with respect to its antifraud claims, *Celotex Corp.*, 477
U.S. at 323; and Defendant met its shifted burden of "set[ting] forth specific facts showing that
there is a genuine issue for trial," *Anderson*, 477 U.S. at 250.  The court thus concludes
summary judgment is inappropriate on Plaintiff's antifraud claims and **DENIES** the Motion
with respect Plaintiff's First, Second, Third, Fourth and Fifth Causes of Action.

**IV.   Disposition**

The court **GRANTS** the Motion as to Plaintiff's Seventh Cause of Action for violation of
Section 5, 15 U.S.C. § 77e(a) and (c).  The court **DENIES** the Motion as to Plaintiff's First,
Second, Third, Fourth and Fifth Causes of Action.